1

2                                                                        O

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11   JAMES LEON DOWDY,                    )   NO. EDCV 11-1111-MAN
                                          )
12                  Plaintiff,            )
                                          )   MEMORANDUM OPINION
13            v.                          )
                                          )   AND ORDER
14   MICHAEL J. ASTRUE,                   )
     Commissioner of Social Security,     )
15                                        )
                    Defendant.            )
16   _____ )

17

18        Plaintiff filed a Complaint on July 19, 2011, seeking review of the

19   denial of his application for supplemental security income ("SSI").  On

20   August 18, 2011, the parties consented, pursuant to 28 U.S.C. § 636(c),

21   to proceed before the undersigned United States Magistrate Judge.  The

22   parties  filed  a  Joint  Stipulation  on  March  12,  2012,  in

23   which:  plaintiff seeks an order reversing the Commissioner's decision

24   and remanding this case for the payment of benefits or, alternatively,

25   for further administrative proceedings; and the Commissioner requests

26   that his decision be affirmed or, alternatively, remanded for further

27   administrative proceedings.

28   //

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On October 5, 2007, plaintiff filed an application for SSI. (Administrative Record ("A.R.") 12.) Plaintiff, who was born on April 23, 1962 (A.R. 22),[1] claims to have been disabled since January 1, 2002 (A.R. 12), due to both mental and physical problems, including depression, paranoia, suicidal thoughts, hallucinations, obsessive compulsive disorder, drug dependency, mood swings, left knee replacement, inability to handle stress, and asthma. (A.R. 222.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration, plaintiff requested a hearing. (A.R. 12.) On January 22, 2009, plaintiff, who was represented by an attorney, appeared and testified at an initial hearing before Administrative Law Judge Michael D. Radensky (the "ALJ"). (A.R. 12, 29-59.) Vocational expert Troy Scott also testified. (A.R. 29-59.) However, plaintiff did not appear for the supplemental hearing held on February 18, 2010, because he was incarcerated. (A.R. 12, 60-82.) Appearing and testifying at that time were independent medical expert David Glassmire and vocational expert David Rinehart. (*Id*.) On April 2, 2012, the ALJ denied plaintiff's claim (A.R. 12-24), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-4). That decision is now at issue in this action.

//

//

---

[1]   On the alleged disability onset date, plaintiff was 45 years old, which is defined as a younger individual. (*Id.; citing* 20 C.F.R. § 416.963.)

2

1

2

## SUMMARY OF ADMINISTRATIVE DECISION

3    The ALJ found that plaintiff has not engaged in substantial gainful
4  activity since October 5, 2007, his application date (A.R. 14), and has
5  the following severe impairments:  "degenerative disc disease in the
6  neck and back; degenerative joint disease in the left knee; mood
7  disorder, not otherwise specified; anxiety disorder, not otherwise
8  specified; [and] polysubstance abuse." (A.R. 15.) The ALJ found that
9  plaintiff's impairments, including his substance abuse disorders, meet
10 sections 12.04(c)(2) and 12.09 of 20 C.F.R. Part 404, Subpart P,
11 Appendix 1 (20 C.F.R. § 416.920(d)). (*Id.*)

12

13    The ALJ found that, even if plaintiff stopped abusing substances,
14 his remaining limitations would constitute a severe impairment or
15 combination of impairments. (A.R. 15.) However, the ALJ further found
16 that plaintiff nonetheless would not have an impairment or combination
17 of impairments that meets or medically equals any of the impairments
18 listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.
19 § 416.920(d)). (*Id.*)

20

21    After reviewing the record, and presuming that plaintiff had
22 stopped his substance abuse, the ALJ determined plaintiff would have the
23 residual functional capacity ("RFC") to perform light work as defined in
24 20 C.F.R. § 416.967(b). (A.R. 16.) Specifically, the ALJ found that
25 plaintiff:

26

27     could lift and/or carry 10 pounds frequently and 20 pounds
28     occasionally; [plaintiff] could stand and/or walk 2 hours in

an eight-hour workday, and sit for 6 hours in an eight-hour workday; he could occasionally balance, stoop, kneel, crouch, crawl, or climb ramps, stairs, ladders, ropes, or scaffolds; [he] could frequently, but not constantly, use his right hand; is limited to simple repetitive tasks; he is precluded from interacting with the public, but he is allowed only non-intense interaction with co-workers and supervisors; [plaintiff] is precluded from tasks requiring hypervigilance or fast paced work.

(*Id.*)

With those limitations, the ALJ concluded that plaintiff would be unable to perform his past relevant work.[2] (A.R. 22.) Given plaintiff's RFC, age, education,[3] work experience, and the testimony of the vocational expert, the ALJ found that plaintiff could perform a significant number of jobs in the national economy if he stopped his substance abuse. (*Id.*) Specifically, the ALJ noted that plaintiff could work as "an electronics worker, a sewing machine operator, and an addresser." (A.R. 23.) Accordingly, the ALJ concluded that, because plaintiff would not be disabled if he stopped his substance abuse, plaintiff's substance abuse disorder is a contributing factor material to the determination of disability under 20 C.F.R. § 416.935. (*Id.*)

---

[2]    In his decision, the ALJ noted that the plaintiff has past relevant work as a car wash attendant, DOT 915.667-010, which is a light, unskilled job. (A.R. 22.)

[3]    The ALJ found that plaintiff has a high school education and is able to communicate in English. (*Id.*)

4

1   Thus, the ALJ found that plaintiff has not been disabled within the

2   meaning of the Social Security Act at any time from the date the

3   application was filed through the date of his decision.  (A.R. 23.)

4

5                          **STANDARD OF REVIEW**

6

7       Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's

8   decision to determine whether it is free from legal error and supported

9   by substantial evidence in the record as a whole.  Orn v. Astrue, 495

10  F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant

11  evidence as a reasonable mind might accept as adequate to support a

12  conclusion.'"  Id. (citation omitted).  The "evidence must be more than

13  a mere scintilla but not necessarily a preponderance."  Connett v.

14  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the

15  record can constitute substantial evidence, only those 'reasonably drawn

16  from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063,

17  1066 (9th Cir. 2006)(citation omitted).

18

19      Although this Court cannot substitute its discretion for that of

20  the Commissioner, the Court nonetheless must review the record as a

21  whole, "weighing both the evidence that supports and the evidence that

22  detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec'y of

23  Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also

24  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is

25  responsible for determining credibility, resolving conflicts in medical

26  testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d

27  1035, 1039 (9th Cir. 1995).

28

                                   5

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ: (1) improperly considered the relevant medical evidence; and (2) improperly discounted the credibility of plaintiff and his girlfriend. (Joint Stipulation ("Joint Stip.") at 4-12, 21-28.) Each of these claims lacks merit.

## I.   **The ALJ Properly Considered The Medical Evidence In The Record.**

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an

6

examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(d).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant. Magallanes, 881 F.2d at 751. When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id*.

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." Lester, 81 F.3d at 831; *see* Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990)(finding that the nonexamining physician's opinion "with nothing more" did not constitute substantial evidence). However, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence." Andrews, 53 F.3d at 1041. Independent clinical findings include "(1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." Orn, 495 F.3d at 632

(internal citations omitted).

Plaintiff alleges four sources of reversible error in the ALJ's treatment of the relevant medical evidence: (A) failure to properly consider the opinion of Nancy A. McCarthy, M.D., a treating physician; (B) failure to properly consider the opinion of Shellee Pollard, a social worker; (C) failure to acknowledge plaintiff's use of a cane for ambulation; and (D) failure to comment on plaintiff's Global Assessment of Functioning ("GAF") scores.  (Joint Stip. at 4-12.)

> **A.   The ALJ Properly Considered The Medical Opinion Of Dr. McCarthy, Plaintiff's Treating Physician.**

Plaintiff claims the ALJ "failed to properly consider the opinions of treating sources, including a medical source statement from Dr. McCarthy, M.D., which appears in the Administrative Record at AR1142-1146." (Joint Stip. at 6.)  At the end of the medical disorder questionnaire cited by plaintiff, Dr. McCarthy opined:

> Patient is totally disabled and is expected to be for life. Patient requires a significant degree of assistance and direction to perform activities of daily living.  The patient['] s capacity to interact appropriately with others, communicate effectively, concentrate, complete tasks, and adapt to stresses common to the work environment (including the pressures of time, supervision & decision making) are severely impaired.  This patient would not be reliable in

8

1    reporting for work, carrying out simple, repetitive tasks.
2    This patient has poor frustration tolerance, and has a limited
3    ability to interact w[ith] the public, peers and supervisors.
4    Current medications are needed to stabilize in the community.

6    (A.R. 1146.)

8        The ALJ only explicitly rejected Dr. McCarthy's opinion insofar as
9    it expressed the opinion that plaintiff was disabled and could not work.
10   (A.R. 19.)   Specifically, the ALJ rejected Dr. McCarthy's conclusion
11   that plaintiff's mental limitations "prevent him from sustaining full
12   employment." (*Id.*)   The ALJ correctly observed that "these statements
13   express an opinion on an issue reserved to the Commissioner, and the
14   undersigned disregards *this conclusion* regarding the claimant's
15   disability." (*Id.*; emphasis added)   As the ALJ noted, "a statement by
16   a medical source that you are 'disabled' or 'unable to work'" is not a
17   medical opinion, and receives no special significance in the ALJ's
18   disability determination. (*Id.*; 20 C.F.R. § 416.927).   Therefore, to
19   the extent Dr. McCarthy opined that plaintiff could not work, the ALJ
20   provided a specific and legitimate reason for disregarding this opinion.

22       To the extent that Dr. McCarthy's mental disorder questionnaire
23   merited consideration as a medical opinion, as distinguished from a non-
24   medical conclusion about plaintiff's disability, the ALJ did not
25   expressly reject it.   The ALJ stated that he had read and considered all
26   of Dr. McCarthy's opinion, as contained in the record. (A.R. 19,
27   stating, "The undersigned has read and considered the total disability
28   statements made by Nancy A. McCarthy, M.D., a staff psychiatrist at the

parole outpatient clinic (Exs. 8F, pp. 7-11 and 11F, p. 2)."). The ALJ then expressly acknowledged the frequency and duration with which Dr. McCarthy or her staff treated plaintiff. (*Id.*, stating, "claimant has sought treatment once or twice a month, from April 2, 2007 to April 28, 2008.") Furthermore, the ALJ expressly noted Dr. McCarthy's opinion that, "if the [plaintiff] was 'medication compliant, his ability to remain stable in the community is more likely.'" (*Id.*; citations omitted.) Upon consideration of all the medical evidence, including Dr. McCarthy's opinion, the ALJ determined that, if plaintiff stopped abusing substances (and presumably was compliant with his medication), he would maintain the mental capacity for simple repetitive tasks and non-intense interaction with co-workers and supervisors, but would be precluded from interaction with the public and tasks requiring hypervigilance or fast paced work. (A.R. 16.)

There is nothing in Dr. McCarthy's *medical* opinion that directly contradicts this assessment. (A.R. 16, 1142.) As to plaintiff's social functioning, Dr. McCarthy opined,

> [plaintiff] has little capacity to interact well with others for any longer perio[d]s of time. He easily becomes inappropriate with others as he misreads social cues and his paranoid ideations remain acute. He cannot communicate well with family, landlords, or fellow employees. He has probl[em]s with neighbors. These behaviors have become more acute with his less[en]ed abil[i]ty to interact well with others *unless he is medication compliant.*

10

(A.R. 1144; emphasis added.)


As to plaintiff's concentration and task completion, Dr. McCarthy opined that "[plaintiff] cannot sustain focus on everyday household routines. He cannot follow simple instructions oral or written. He has problems concentrat[ing] as he is easily distracted." (*Id.*)


In fact, these very symptoms and limitations were recognized and taken into account by Dr. Glassmire, the medical expert, whose opinion the ALJ credited in formulating plaintiff's mental RFC assessment. The ALJ found the testimony of medical expert Dr. Glassmire "highly credible." (A.R. 20.) Dr. Glassmire opined that, absent substance abuse, plaintiff would have "mild difficulty with activities of daily living; moderate difficulty with social functioning; moderate difficulty with concentration persistence and pace." (*Id.*) Based on these findings, Dr. Glassmire -- in the very language of the ALJ's RFC assessment -- opined that plaintiff was limited to "simple repetitive tasks, no interaction with the public; non-intense interaction with co-workers;. . .[no] tasks involving hypervigilance or fast paced work." (*Id.*)


In short, the ALJ's decision is not inconsistent to any significant degree with the opinion of treating physician Dr. McCarthy. However, to the extent that Dr. McCarthy's medical opinion could be read to suggest that plaintiff could neither perform simple, repetitive tasks nor engage in non-intense interactions with co-workers, the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for rejecting those implications. First, the ALJ noted that, while

plaintiff did not apply for SSI benefits until October 5, 2007, Dr. McCarthy based her medical opinion on examinations of plaintiff beginning on April 2, 2007. (A.R. 18, in which the ALJ noted that "a significant amount of the treatment records are from the period of time prior to [plaintiff's] eligibility for benefits")[4]; see Dotson v. Astrue, 2011 U.S. Dist. LEXIS 52751 at *18 (E.D. Cal. May 17, 2011)(noting that an opinion rendered almost a year before the filing of plaintiff's SSI application was "stale and not time-relevant to [p]laintiff's current claim of disability," especially as compared to another opinion rendered one month after the application was filed). Second, the ALJ noted Dr. McCarthy's comment that plaintiff will have an increased ability to remain stable if he takes his medication as directed. (See A.R. 19, 1145.) The ALJ also noted the contemporaneous report by plaintiff's treating physician Dr. Gurmit Sekhon, at the Arrowhead Medical Center, who also opined that plaintiff "'responded to the medication in the past' and would be stabilized on medication." (A.R. 19, 1250.) "Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits." Warre v. Comm'r, 439 F.3d 1001, 1006 (9th. Cir. 2006). Lastly, the ALJ gave significant weight to the opinions of the medical expert, consultative examiner, and State agency review physicians, finding "all

---

[4]   As the ALJ correctly notes, plaintiff did not apply for SSI until October 5, 2007. Thus, while the ALJ considered plaintiff's complete medical history, including records that pre-date plaintiff's SSI application, the relevant period for determining whether plaintiff is entitled to benefits is the period beginning on October 5, 2007. See 43 U.S.C. § 1382(c)(7)(noting that an application of an individual for SSI benefits shall be effective on the later of "the first day of the month following the date such application is filed" or "the first date of the month following the date such individual becomes eligible for such benefits with respect to such application"); see also 20 C.F.R. §§ 416.330, 416.335.

of these physicians are generally consistent in [opining] that [plaintiff] is able to perform work as determined by the [RFC] herein." (A.R. 22.)

On January 22, 2008, licensed clinical psychologist and consultative examiner, Clifford Taylor, Ph.D., found "no credible evidence or impairment in [plaintiff's] ability to understand, remember and carry out job instructions, maintain attention, concentration, persistence and pace, relate and interact with supervisors, coworkers and the public or adapt to day-to-day work activities . . . ." (A.R. 1089-90.) On February 20, 2008, State agency psychiatrist Barbara A. Smith, M.D., opined that plaintiff had no difficulty in "maintaining social functioning" and "maintaining concentration, persistence, or pace." (A.R. 1105.) On October 16, 2009, Dr. Taylor conducted a second consultative examination, and in consideration of plaintiff's "history of homelessness, poor social interactions, strong criminal history, and drug abuse history," Dr. Taylor found "evidence of moderate impairment in [plaintiff's] ability to understand, remember, and carry out job instructions, maintain attention, concentration, persistence and pace, and marked impairment in [plaintiff's] ability to relate and interact with supervisors, coworkers, and the public." (A.R. 1331.)

Notably, the ALJ gave plaintiff a more restrictive mental RFC than either the State agency physicians or the consultative examiner. (A.R. 16, 20.) Therefore, if Dr. McCarthy's medical opinion is construed to suggest that plaintiff could neither complete simple, repetitive tasks nor engage in non-intense interactions with coworkers, her opinion is contradicted by the opinions of non-treating physicians, which are

13

supported by independent clinical findings.  *See* Andrews, 53 F.3d at 1041.

The ALJ gave specific and legitimate reasons for rejecting Dr. McCarthy's opinion to the extent it conflicted with the ALJ's assessment of plaintiff's mental RFC.  As a result, the ALJ did not err in his assessment of Dr. McCarthy's opinion.

      **B.**   **The ALJ Properly Considered The Opinion Of Plaintiff's Social Worker, Shellee Pollard.**

Plaintiff also complains that the ALJ failed to properly consider the opinion of plaintiff's social worker, Shellee Pollard, LCSW, at the parole outpatient clinic.  (Joint Stip. at 10.)  Specifically, plaintiff points to Ms. Pollard's "finances" notes from February 11, 2008, which read:

> Patient is recommended for SSI.  Patient is totally disabled and is expected to be for life.  Patient requires a significant degree of assistance and direction to perform activities of daily living.  This patient's capacity to interact appropriately with others, communicate effectively, concentrate, complete tasks, and adapt to stresses common to the work environment (including the pressures of time, supervision and decision making), are severely impaired. *However, he is currently working in sales and believes he can work and will try it.*

14

1    (*Id.*, relying on A.R. 1112; emphasis added.)

2

3         The social worker's report does not establish that plaintiff was
4    incapacitated.   First, for the same reason that plaintiff's treating
5    physician may not usurp the role of the ALJ in determining plaintiff's
6    disability, neither may plaintiff's social worker.   Thus, the social
7    worker's conclusion that "[plaintiff] is totally disabled and is
8    expected to be for life" is not controlling.   20 C.F.R. § 416.927(d).
9    Second, as a social worker, Ms. Pollard is not considered an acceptable
10   medical source.   20 C.F.R. § 416.913(a),(d).   The regulations treat
11   "public and private social welfare agency personnel" as "other sources,"
12   20 C.F.R. § 416.913(d)(3), and the ALJ may expressly disregard lay
13   testimony if he "gives reasons germane to each witness for doing so."
14   Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).   While the ALJ did
15   not address the quoted finances notes, he did address plaintiff's most
16   "recent CDC parole reports, dated February 25, 2008," in which Ms.
17   Pollard reiterated, verbatim, her February 11, 2008 appraisal of
18   plaintiff's finances. (A.R. 19, 1108-09.)   In particular, the ALJ noted
19   Ms. Pollard's statement that "[plaintiff] reported he was taking his
20   medication and [it] was working to keep his symptoms under control[]."
21   (*Id.*)   This was an appropriate reason for disregarding Ms. Pollard's
22   testimony, because plaintiff's self-reporting as to the efficacy of his
23   medication belies Ms. Pollard's assessment of the nature and severity of
24   plaintiff's limitations.[5]   (*Id.*)

25

26   _____

27        [5]    Moreover, Ms. Pollard's opinion of plaintiff's work-related
     limitations was reasonably credited in plaintiff's RFC, which limited
28   him to simple, repetitive, non-hypervigilant tasks and non-intense
     interaction with co-workers.  (A.R. 16.)

1    Therefore, the ALJ did not err in disregarding a portion of Ms.

2  Pollard's reports.

3

4         **C.    The  ALJ  Committed  No  Reversible  Error  By**

5              **Excluding Plaintiff's Use Of A Cane From His**

6              **RFC Assessment.**

7

8    Plaintiff contends that the ALJ erred in his RFC assessment and

9  hypothetical  questions  to  the  vocational  expert,  because  his

10  hypothetical questions "fail[ed] to include the requirement that

11  plaintiff needs to use a cane whenever standing or walking." (Joint

12  Stip. at 4.) Plaintiff relies on the vocational expert's testimony, and

13  argues that the ALJ erred in ignoring the reduction in jobs that

14  resulted from plaintiff's use of a cane:

15

16    Question: []If the individual were using a cane when standing

17              or walking, would that have any effect on the jobs

18              you identified?

19    Answer:   Not the addresser, [which] would not be impacted.

20              Both  the  sewing  machine  operator  and  electronics

21              worker  need  to  move  finished  products  when  they

22              accumulate to some type of central place. Depends

23              on  how  far  that  central  place  is.   If  it's

24              reasonably close I don't see a significant impact.

25              It's almost a job by job situation.  I guess in my

26              opinion it might be wise to erode the figures I've

27              provided  by  50%  to  rule  out  the  far  distance

28              repositories.

16

Question:  You're saying that at some point in time they have
          to like push a bin with finished product somewhere
          or carry a basket, or these sort of things?

Answer:    Exactly. (AR79)

(Joint Stip. at 5.)

The ALJ's failure to credit plaintiff's cane usage does not constitute reversible error.  As the ALJ expressly noted at the hearing, "[plaintiff] *asserted* he has been using a cane for 10 to 15 years." (A.R. 17; emphasis added.)  However, there is little support for this assertion in the record.  The ALJ noted that plaintiff underwent a left total knee replacement in 2005 (A.R. 18), and a physician's note dated January 26, 2007, indicates that plaintiff then required use of a knee brace and a cane (A.R. 18, 1065).  A face-to-face parole report dated March 27, 2007, likewise indicated plaintiff used a cane for ambulation. (A.R. 1147.)  However, by September 12, 2007, plaintiff's parole report indicated that plaintiff's "gait and movement [are within normal limits]" (A.R. 1158), and no parole reports during the relevant period beginning October 5, 2007 -- plaintiff's SSI application date -- indicate any cane usage (A.R. 1061-79).  The ALJ read and considered plaintiff's adult function report, dated April 14, 2008, in which plaintiff indicated that he used a cane.[6]  (A.R. 17, 304.)  In the same report plaintiff stated he could perform certain daily living activities such as "cleaning, watching television, maintaining personal care,

---

[6]    The ALJ failed to mention an earlier adult function report completed by plaintiff only five months earlier, on October 25, 2007, in which plaintiff reported neither problems with squatting, bending, standing, or walking, nor any need to use a cane.  (A.R. 258-59.)

17

1   riding in a car, and attending church a couple times a month." (A.R. 17,

2   298-302.)     Thus,  although  exertional  limitations  were  alleged  by

3   plaintiff, the ALJ reasoned that "[plaintiff]'s ability to participate

4   in  the  activities  of  daily  living,  stated  above,  undermined  the

5   credibility of the [plaintiff]'s allegations of functional limitations."

6   (A.R. 17.)

7

8        Moreover,  the  ALJ  read  and  considered  the  third  party  function

9   reports submitted by plaintiff's girlfriend, Katarena Loven, on October

10  26, 2007, and April 14, 2008, respectively.  (A.R. 17-18.)  Although

11  plaintiff asserted that he used a cane throughout that time period, only

12  the  latter  of  Ms.  Loven's  two  reports  identifies  any  exertional

13  limitations or need to use a cane.  (A.R. 241-48, 286-93.)

14

15       Thus,  the  only  evidence  of  plaintiff's  cane  usage  during  the

16  relevant period is in the inconsistent testimony of plaintiff and his

17  girlfriend -- individuals who, for reasons discussed below, the ALJ

18  found  lacked  credibility.   Given  the  lack  of  credible  evidence  to

19  support plaintiff's alleged need to use a cane, the ALJ did not err by

20  excluding such purported cane usage from plaintiff's RFC, and his

21  hypothetical questions to the vocational expert.  *See* Osenbrock v.

22  Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001)(ALJ not bound to accept as

23  true  the  restrictions  set  forth  in  hypothetical  if  they  were  not

24  supported by substantial evidence).

25

26       Further, even assuming *arguendo* that the ALJ erred, any omission of

27  plaintiff's asserted need to use a cane from the RFC determination and

28  the hypothetical to the vocational expert would have been harmless.  *See*

1  Stout, 454 F.3d at 1056 (where ALJ's error lies in a failure to properly

2  discuss evidence favorable to the claimant, a reviewing court cannot

3  consider the error harmless unless it can confidently conclude that no

4  reasonable ALJ, when fully crediting the evidence, could have reached a

5  different disability determination). As noted by plaintiff, even after

6  accounting for plaintiff's alleged cane usage, the vocational expert

7  still opined that plaintiff could perform jobs existing in significant

8  numbers in the local and national economies.  (A.R. 79.)

9

10  Specifically, the vocational expert testified that cane usage would

11  have no effect on plaintiff's ability to work as an addresser and would

12  only erode the numbers of jobs as machine operator and electronics

13  worker by 50%.  (A.R. 79.)  Without consideration of the cane, the

14  vocational expert opined there were 4,550 such jobs available locally

15  and 89,000 such jobs available nationally.  (A.R. 76-77.)  With cane

16  usage, those numbers drop to 3,175 and 56,000 respectively.[7]  The Ninth

17  Circuit has held that fewer jobs in the local economy constitute

18  "significant numbers."  See Barker v. Secretary, 882 F.2d 1474, 1478

19  (9th Cir. 1998)(reviewing district court decisions within this circuit

20  and holding 2,466 jobs constitute a significant number under the case

21  law from other circuits and district courts within this circuit).

22  Although plaintiff hints that this Court should consider the population

23  of the local region, which plaintiff asserts exceeds 15,000,000 (Joint

24

25

26  [7]     Available locally and nationally, there were, respectively,
1,400 and 32,000 electronics worker positions, 1,350 and 34,000 sewing
machine operator positions, and 1,800 and 23,000 addresser positions.
27  (A.R. 76-77.) Halving only the electronics worker numbers to 700 and
16,000, and the sewing machine operator numbers to 675 and 17,000, the
28  resulting jobs available to plaintiff would total 3,175 locally and
56,000 nationally.

19

Stip. at 5), "the plain language of the regulations do not contemplate a ratio analysis." Martinez v. Heckler, 800 F.2d 771, 775 (9th Cir. 1986)(declining to ignore the number of jobs that plaintiff is able to perform and to analyze the ratio of jobs to the general population of the Greater Metropolitan Los Angeles and Orange County areas).   No reasonable ALJ could have reached a different disability determination given this precedent.   Therefore, to the extent the ALJ failed to account for plaintiff's alleged cane usage appropriately, it was harmless.

For these reasons, the ALJ's treatment of plaintiff's alleged need to use a cane does not constitute reversible error.

D.   **The ALJ Properly Considered Plaintiff's GAF Scores In Determining Plaintiff's RFC.**

Lastly, plaintiff objects to the ALJ's failure to comment on three GAF scores -- a 41, 34, and 48 -- which, according to plaintiff, indicate he is non-functional. (Joint Stip. at 10.)   Federal courts have recognized that "an ALJ's failure to mention a GAF score does not render his assessment of a claimant's RFC deficient." Chavez v. Astrue, 699 F. Supp. 2d 1125, 1135 (C.D.Cal. 2009)(collecting cases).   As the cases cited in Chavez make clear, an ALJ's assessment of the medical evidence is not deficient simply because he fails to mention GAF scores of record. *Id*.

All three of the GAF scores on which plaintiff relies were assessed while plaintiff was incarcerated in 2003 and 2006 (A.R. 353, 357, 371)

-- *to wit*, *before* the relevant time period at issue in this case. Further, the ALJ considered plaintiff's GAF scores from the relevant period. (A.R. 19-21.) The ALJ noted that on April 16, 2009, and shortly thereafter on April 20, 2009, plaintiff was assessed with GAF scores of 20 and 55 respectively, but that plaintiff was then abusing alcohol, marijuana, cocaine, and PCP. (A.R. 19-20.) The ALJ also acknowledged that, on October 16, 2009, "the consultative examiner diagnosed plaintiff with polydrug abuse and dependence and gave the [plaintiff] a GAF score of 50." (A.R. 21.) The ALJ found that plaintiff's GAF scores had "little evidentiary value," because they are "subjectively assessed scores reveal[ing] only snapshots of impaired and improved behavior," and he preferred, instead, to "give[] more weight to the objective details and chronology of the record." (A.R. 19, n.1.) The ALJ explained his reasoning with respect to plaintiff's GAF scores adequately and properly considered plaintiff's GAF scores in conjunction with the medical evidence as a whole.

\*       \*       \*       \*       \*

In sum, plaintiff has not identified any legal error in the ALJ's treatment of the relevant medical evidence. Moreover, the ALJ's RFC assessment is supported by substantial medical evidence. Plaintiff's first issue, therefore, does not warrant reversal or remand.

## II.   **The ALJ Properly Discounted The Credibility of Plaintiff And His Girlfriend.**

Once a disability claimant produces objective medical evidence of

an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. § 416.929(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 416.929(c).

The ALJ also is required to consider the credibility of lay testimony provided by family members and friends, who may provide their own statements regarding a claimant's disabling symptoms. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009). If an ALJ rejects lay witness testimony, the ALJ must provide specific reasons that are germane to each witness whose testimony he rejects. *Id.* While lay testimony cannot be rejected merely because it is irrelevant to medical conclusions or not supported by medical evidence, *id.* at 1116, inconsistency with medical evidence is a germane reason to discredit lay

22

testimony.  <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1218 (9th Cir. 2005).

> **A.   The ALJ Properly Determined That Plaintiff**
> **Lacked Credibility**.

The ALJ found that "if [plaintiff] stopped the substance abuse, [plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms."  (A.R. 18.)   Further, although the ALJ cited affirmative evidence of malingering in the record (A.R. 21), he did not make a specific finding of malingering. Accordingly, the ALJ's reason for finding plaintiff to lack credibility must be clear and convincing.

The ALJ stated that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with [the ALJ's RFC] assessment." (A.R. 18.)  More specifically, the ALJ found plaintiff to be not credible because of:   (1) inconsistencies between plaintiff's assertion regarding his functional limitations and his daily activities; (2) plaintiff's extensive criminal history involving crimes of deception and moral turpitude; and (3) inconsistencies between plaintiff's alleged functional limitations and the objective medical evidence.  (A.R. 17-21.)   These reasons are adequate to support the ALJ's unfavorable credibility determination.

The ALJ's first ground for rejecting plaintiff's testimony -- that plaintiff's function report is internally contradictory -- is clear and convincing.   The ALJ considered plaintiff's April 14, 2008, adult

function report but found plaintiff "only credible to the extent that he can do the work described herein." (A.R. 17.) He noted that "[plaintiff] stated he could do the following activities of daily living includ[ing]: cleaning, watching television, maintaining personal care, riding in a car, and attending church [a] couple times a month." (*Id.*, A.R. 298-302.) In particular, plaintiff explained that he takes "4 hours to clean house because I do a thor[ou]gh job," and that he does so "everyday, sometimes 2x a day." (A.R. 300.) At the same time, the ALJ noted "[plaintiff] stated he has exertional, postural, and mental limitations that would make it difficult for him to work." (A.R. 17, 303-04.) Specifically, plaintiff alleged that his condition affected his ability to lift, squat, bend, stand, reach, walk, talk, hear, see, remember, complete tasks, concentrate, understand, follow instructions, use his hands, and get along with others. (A.R. 303.) Plaintiff claimed he could only walk two blocks before needing to rest and could only pay attention for one minute at a time. (*Id.*) It is difficult to conceive how plaintiff could thoroughly clean house for four hours at a time, sometimes twice a day, if he had trouble lifting, bending, standing, completing tasks, using his hands, and concentrating for more than a minute. As the ALJ recognized, "[plaintiff]'s ability to participate in the activities of daily living, stated above, undermined the credibility of [plaintiff]'s allegations of functional limitations." (A.R. 17.) Therefore, the internal contradictions within plaintiff's adult function report provided a clear and convincing reason for finding that plaintiff lacked credibility.

Second, plaintiff's extensive criminal history was also a clear and convincing reason supporting the ALJ's adverse credibility finding.

Felony convictions and convictions involving moral turpitude are a proper basis for an adverse credibility determination. <u>Albiderez v. Astrue</u>, 504 F. Supp. 2d 814, 822 (C.D. Cal. 2007)(finding plaintiff's convictions for false identification to a police officer and attempted robbery supported the ALJ's adverse credibility finding). As the ALJ explained, "[plaintiff] has admitted to being incarcerated with charges being one of moral turpitude or a crime of deception." (A.R. 18.) In particular, the ALJ noted that plaintiff "was charged with robbery which makes his credibility highly suspect." (*Id.*) Indeed, the exhibit that the ALJ referenced shows that, in addition to plaintiff's numerous drug-related convictions, plaintiff has been incarcerated for robbery, escape from jail, and vehicle crimes. (A.R. 346.) Thus, plaintiff's criminal history was a clear and convincing reason for finding that plaintiff lacked credibility.

Finally, in view of the above findings, the inconsistency between plaintiff's subjective testimony and the objective medical findings provided an additional clear and convincing reason for finding that plaintiff lacked credibility. As the ALJ detailed, multiple reports by the consultative examiners contained evidence of malingering, which cast doubt on plaintiff's credibility. (A.R. 20-21.) In fact, on January 28, 2008, at plaintiff's mental status consultative examination, plaintiff "failed the Test of Memory Malingering and his poor performance was consistent with malingering memory impairment." (A.R. 21.) The ALJ noted the consultative examiner's report that "[plaintiff] embellished his symptoms and made inconsistent statements" and that "there was no credible evidence of a mental impairment as a result [of plaintiff's] poor cooperation in the examination." (*Id.*) During a

January 9, 2008, internal medicine evaluation, the consultative examiner noted that "[plaintiff] was not a good historian." (*Id.*)  At an October 16, 2009 mental status examination, on October 16, 2009, plaintiff's performance was again "consistent with malingering memory impairment." (*Id.*)   Additionally, the ALJ relied on the consultative examiner's report, which found "inconsistencies between [plaintiff]'s presentation and history; [plaintiff] attained IQ test scores in the mental retardation range which were inconsistent with his verbal and work/school history."   (*Id.*)  Taken together, the reports from plaintiff's consultative examinations support the ALJ's conclusion that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent that they are inconsistent with [the ALJ's RFC] assessment."   (A.R. 18.) Inconsistency with the objective medical evidence, thus, was a clear and convincing reason for finding plaintiff's testimony lacked credibility.

Accordingly, the ALJ gave clear and convincing reasons for discrediting plaintiff's testimony.

**B.    The ALJ Properly Determined That Plaintiff's Girlfriend, Katarena Loven, Also Lacked Credibility.**

The ALJ read and considered the third party function reports submitted by plaintiff's girlfriend, Katarena Loven, but "[found] her only credible to the extent that [plaintiff] can do the work described [in the ALJ's RFC assessment]."   (A.R. 17-18.)  The ALJ reasoned that, "[t]he third party function report has very little probative value in

26

1   that it mirrors [plaintiff]'s function report and allegations." (A.R.

2   18.) The ALJ added that Ms. Loven is "not a medical professional," "she

3   [had] the motivation to be helpful to [plaintiff] so he [could] receive

4   benefits," and "her statements were not made under oath." (*Id.*) The

5   ALJ concluded that "her assertions are not credible as they are not

6   supported by any medically determined impairment." (*Id.*)

7

8       Plaintiff complains that the ALJ's reasoning is circular and

9   constitutes reversible error. (Joint Stip. at 22-24.) He contends

10  that, "[i]f we are to accept the ALJ's analysis of Ms. Loven's third

11  party statements, there would never be a third party statement

12  acceptable by the Administration . . . ." (Joint Stip. at 22.) From

13  this, plaintiff asserts that the ALJ's determination "makes no sense

14  whatsoever other than it is the ALJ's attempt to support his

15  predetermined decision to deny benefits in this case." (Joint Stip. at

16  24.)

17

18      Contrary to plaintiff's contention, however, the fact that Ms.

19  Loven's reports "mirrored" plaintiff's function report was a germane

20  reason for disregarding Ms. Loven's statements. Just like in

21  plaintiff's function report completed the very same day as her report

22  (A.R. 298-305), Ms. Loven reported that plaintiff is limited in lifting,

23  bending, standing, reaching, walking, talking, hearing, seeing,

24  completing tasks, concentrating, understanding, following instructions,

25  and using his hands (A.R. 286-93). She likewise reported that plaintiff

26  cleans house four hours a day, engages in certain daily activities

27  including watching television, maintaining personal care, riding in a

28  car, and attending church a couple of times a month. (*Id.*) Given that

1  Ms. Loven's third party report made the same assertion as in plaintiff's
2  own report, which the ALJ properly found lacked credibility, the fact
3  that Ms. Loven's statements  mirrored those of plaintiff was a germane
4  reason for disregarding her essentially identical report.  *See* <u>Valentine</u>
5  <u>v. Astrue</u>, 574 F.3d 685, 694 (9th Cir. 2009)(finding that because the
6  ALJ gave clear and convincing reasons for rejecting the claimant's
7  subjective testimony, the ALJ therefore gave germane reasons when he
8  rejected the similar testimony of claimant's wife).

9

10                    *     *     *     *     *

11

12      For all these reasons, the ALJ did not commit reversible error with
13  respect to his credibility findings.

14

15  ///
16  ///
17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and is free from material legal error.  Neither reversal of the Commissioner's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:   January 31, 2013

_Margaret a. Nagle_
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

29